## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John State; David Warrick; James Hardin; Jerry Brunson; Jarvis Jeter; Kevin Micheal Anderson; Maurice Burgess; Stafford Kearse; Justin Rose; Kewayne Lee; Curtis Scott; Anthony Glenn; Matthew Franks Thomas; and Christopher Montgomery, | ) ) ) ) ) ) ) ) | C/A No. 0:17-3326-MGL-PJG |
| | ) | |
| Plaintiffs, | ) ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| v. | ) ) | |
| | ) | |
| South Carolina Department of Corrections; Warden Willie Eagleton, *individually and/or in his official capacity as warden of Evans Correctional Institution*; and Associate Warden Annie Sellers, *individually and/or in her official capacity as associate warden of Evans Correctional Institution*; Major Charles West, *SCDC Correctional Officer, individually and/or in his official capacity as an employee of SCDC,* | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| _____ | ) | |

The plaintiffs, who were all state prisoners during the relevant time period and who are represented by counsel, filed this action pursuant to 42 U.S.C. § 1983 against the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment for failure to exhaust administrative remedies. (ECF No. 28.) The plaintiffs filed a response in opposition (ECF No. 46), and the defendants replied (ECF No. 55). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion (ECF No. 28) should be granted in part and denied in part.

# BACKGROUND

During the relevant period of this action, the plaintiffs were inmates at Evans Correctional Institution ("ECI"), a state prison within the South Carolina Department of Corrections ("SCDC"). As more fully detailed below, during his incarceration at ECI, each plaintiff was allegedly assaulted on one or more occasions by other inmates. In their Complaint, as amended, the plaintiffs raise various claims pursuant to 42 U.S.C. § 1983 as well as state law claims. (ECF No. 15.)

# DISCUSSION

## A.  Applicable Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Under Rule 56, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

## B.       Exhaustion of Administrative Remedies

The defendants argue that the plaintiffs failed to exhaust their administrative remedies with regard to their claims.[1]  A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a).  Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Generally, to satisfy this requirement, a plaintiff must avail himself of every level of available administrative review.  See Booth v. Churner, 532 U.S. 731 (2001); but see Ross v. Blake, 136 S. Ct. 1850 (2016) (describing limited circumstances where exhaustion may be excused). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective.  Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739).  Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).  The defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies.  See Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017) (quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)).

---

[1] Contrary to the defendants' argument, failure to exhaust administrative remedies under the PLRA is considered an affirmative defense and not a jurisdictional infirmity.  See Jones v. Bock, 549 U.S. 199 (2007).



Pursuant to South Carolina Department of Corrections policy (see SCDC Policy GA-01.12 "Inmate Grievance System", ECF No. 46-1), an inmate seeking to complain of prison conditions generally must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, subject to certain exceptions not applicable here, review from the South Carolina Administrative Law Court ("ALC"), a state executive-branch tribunal, is generally part of the available administrative remedies an inmate must exhaust. S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)); (SCDC Policy GA-01.12 "Inmate Grievance System" at § 13.9, ECF No. 46-1 at 9-10).

The law is clear that exhaustion is a prerequisite to suit and must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 676-77 (4th Cir. 2005); see, e.g., Page v. Paduly, No. 9:09-cv-0952-RMG-BM, 2010 WL 4365644, at *1 (D.S.C. Oct. 28, 2010) (finding that a plaintiff failed to exhaust his administrative remedies where he either did not properly pursue a grievance concerning the issues raised in the case prior to filing the lawsuit, or did not even file grievances until after the lawsuit had already commenced); Cabbagestalk v. Ozmint, C/A No. 9:06-3005-MBS, 2007 WL 2822927, at *1 (D.S.C. Sept. 27, 2007) (noting that the court must look to the time of filing—not the time the district court is rendering its decision—to determine if exhaustion has occurred); see also Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001)

(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999) (holding a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

The only recognized exception to the PLRA's requirement to exhaust administrative remedies stems from the statutory language itself:  an inmate need not pursue administrative remedies if they are not "available."  <u>Ross</u>, 136 S. Ct. at 1858; <u>see also Moore</u>, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").  However, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are."  <u>Moore</u>, 517 F.3d at 725 (citing <u>Woodford</u>, 548 U.S. 81).

The PLRA's exhaustion requirement is a robust one.  <u>See Ross</u>, 136 S. Ct. at 1856-58. Prisoners must therefore diligently and properly follow the administrative procedures that are available.  <u>See Woodford</u>, 548 U.S. at 90.  Drawing on the statutory language, <u>Ross</u> instructs that a finding that administrative remedies were unavailable should be rare and identifies three ways to show unavailability.[2]  In the first scenario, a prisoner may show—with evidence, not conjecture—that the procedures operate as a dead end because officers are unable or consistently unwilling to provide any relief to aggrieved inmates.  <u>See Ross</u>, 136 S. Ct. at 1859 ("When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.); <u>Booth</u>, 532 U.S. at 736 (suggesting that a remedial scheme is available where the administrative process has authority to take some action in response to a complaint).  The examples

---

[2] A prisoner may demonstrate unavailability by showing that the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it."  <u>Ross</u>, 136 S. Ct. at 1859.  That method is not at issue in this case.



provided in <u>Ross</u> to invoke this method of demonstrating unavailability contemplate that a deficiency of this type would be systemic or widespread, or at least not isolated. <u>See Ross</u>, 136 S. Ct. at 1859 (giving the following examples of when an administrative remedy is a dead end: when a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims authority to consider them; or when administrative officials have apparent authority but decline ever to exercise it).

Alternatively, a prisoner may demonstrate unavailability by showing that, in his particular case, prison officials thwarted his efforts to take advantage of the grievance process through machination, misrepresentation, or intimidation. <u>Ross</u>, 136 S. Ct. at 1860. Again, the <u>Ross</u> Court provided some examples of the "rare" circumstances where this showing can be met. <u>Id.</u> at n.3 (citing cases where correctional facilities staff misled the inmate about the existence of a process or its rules; used threats or intimidation; or misled him into thinking he had done everything necessary to use the process). Therefore, <u>Ross</u> seems to require that, to prevail on an assertion that prison officials *thwarted* his efforts to exhaust, an inmate must be able to demonstrate something more than isolated negligence on behalf of prison officials. <u>Id.</u> at 1860 (discussing machination, misrepresentation, or intimidation).

These parameters guide the court's application of the law to the facts presented as to each plaintiff.

### 1. Plaintiffs Jeter, Lee, and Glenn

In their reply, the defendants concede that Plaintiffs Jeter, Lee, and Glenn exhausted their administrative remedies and withdraw their motion as to exhaustion. (ECF No. 55 at 3.) Accordingly, the claims raised by these plaintiffs should proceed.

### 2. Plaintiffs Thomas, Scott, Anderson, Warrick, and Brunson

Plaintiffs Thomas, Scott, Anderson, and Warrick argue that they are no longer inmates and therefore not subject to the PLRA's exhaustion requirement. (Pl.'s Resp. Opp'n Summ. J., ECF No. 46 at 32.) The PLRA's exhaustion requirement is not applicable if the complaint is filed after the plaintiff is released from prison. Cofield v. Bowser, 247 F. App'x 413, 414 (4th Cir. 2007) ("A former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA.") (citing Norton v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005)). The defendants concede this argument as to these plaintiffs only, and withdraw their motion as to them. (ECF No. 55 at 2.)

Although Plaintiff Brunson raises this argument as well, the defendants argue that, even though Brunson is no longer an inmate, he was a prisoner as defined by the PLRA at the time the complaint was filed. See Cofield, 247 F. App'x at 413 ("[I]t is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies."). In support of their argument, the defendants provide a Bed History Report and affidavit testimony that indicates Brunson was released from the SCDC system in March 2018. (ECF No. 63-14 at 1; Anderson Suppl. Aff. ¶ 3, ECF No. 63-7 at 2.) Review of the docket shows that the Amended Complaint was filed in state court on November 1, 2017, was removed to this court on December 8, 2017, and was further amended on January 9, 2018. Accordingly, the record indisputably shows



that Brunson was subject to the exhaustion requirements of the PLRA, and his arguments as to exhaustion will therefore be addressed below.  See infra B.5 at 14-16.

### 3.  Plaintiff Montgomery

Plaintiff Montgomery's allegations stem from a stabbing assault that occurred on July 2, 2017.  (2d Am. Compl. ¶¶ 239-49, ECF No. 15 at 22-23.)  In response to the defendants' argument that he failed to exhaust his administrative remedies, Montgomery provides affidavit testimony in which he avers:

> . . . I wrote to Warden Eagleton on July 8, 2017 on a Request to Staff form after I was stabbed on July 2, 2017 but not found for 2 days.  I complained that I wanted to be transferred.  I never got a response from Warden Eagleton and then forty-five (45) days passed so I filed a Step 1 grievance but could not attach the [Request to Staff] because it was never returned to me.  I never got a response to the Step 1 [grievance] so I could not file a Step 2 grievance.  The instructions on the back of the Step 1 tells me that I need to get an answer to the Step 1 grievance before I can file a Step 2 grievance.
>
> After I did not get anything back, I filed another Step 1 grievance.  I finally got an answer to that Step 1 and was told that the grievance was forwarded to police services but that they returned the grievance stating that an investigation was not warranted.  I then filed a Step 2 grievance and that grievance was denied.

(Montgomery Aff. ¶¶ 19-20, ECF No. 46-19 at 4-5.)

In reply, the defendants provide countering affidavit testimony that SCDC has no record of the specific request to staff that Montgomery avers he filed.  (Anderson Suppl. Aff. ¶ 14, ECF No. 64 at 9.)  They also argue that, even if Montgomery had filed a request to staff, he waited considerably longer than forty-five days before filing his Step 1 grievance on October 9, 2017.[3]  (Id. ¶ 15.)  Although the record does not appear to contain the full content of Montgomery's October 9,

---

[3] Notably, it does not appear that SCDC rejected the Step 1 grievance as untimely.

2017 Step 1 grievance,[4] review of SCDC's computer summary indicates that Montgomery "wants an investigation into the unprofessionalism displayed by Evans Correctional Staff when he was stabbed on 7/2/17 and assaulted again on 9/27/17." (ECF No. 64-4 at 4.) It appears that this grievance was forwarded to "police services" for an investigation, and the "action due date" for the grievance was extended. (Id.) The defendants do not specifically address or refute Montgomery's testimony regarding his filing and receipt of a response to a Step 2 grievance.

Based on the foregoing, the court concludes that a dispute of fact exists regarding whether Montgomery properly exhausted his administrative remedies. As stated above, Montgomery avers that he completed all of the necessary steps of the grievance process. Significantly, this assertion is supported by the defendants' records, which indicate that SCDC had information sufficient to warrant some sort of investigation or referral to police services in response to Montgomery's allegations as shown on the computer summary of Montgomery's October 9, 2017 Step 1 grievance. As to the timeliness of Montgomery's submissions, Montgomery avers that he waited the requisite forty-five days after submitting his Request to Staff, but received no response. (SCDC Policy GA-06.04 "Request to Staff Member" at ¶ 3.6, ECF No. 66-13 at 4 ("All RTSM should be responded to within 45 calendar days . . . .")). Caselaw suggests that this inaction by SCDC alone could render the informal resolution step exhausted. See Moore, 517 F.3d at 725 ("[T]o be entitled to bring suit

---

[4] Unhelpfully, the record does not appear to contain the actual Step 1 grievance form which would assist in determining if or when the grievance was returned to Montgomery and would contain any subsequent instructions to Montgomery on what actions, if any, he needed to next take in the grievance process. In fact, the entire record submitted in support of the defendants' motion is virtually impossible to navigate, since they generally provide only citations to the name or bates number of a document without identifying where in the voluminous filings such document may be found. As a result, consideration of the motion required a virtual needle-in-the-haystack search. Counsel is cautioned to rectify this problem in future filings.



in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.") (internal citation and quotation omitted). Accordingly, at this time, the defendants have not carried their ultimate burden to show that Montgomery's claims should be dismissed for failure to exhaust his administrative remedies.

### 4. Plaintiff Kearse

Plaintiff Kearse's allegations stem from four assaults that occurred on or about July 6, 2016, July 9, 2016, May 25, 2017, and August 5, 2017. (See 2d Am. Compl. ¶¶ 123-144, ECF No. 15 at 12-14.) In response to the defendants' argument that he failed to exhaust his administrative remedies, Kearse provides affidavit testimony in which he avers:

> [Following the July 6, 2016 incident,] I filed a request on the kiosk and asked to be moved from that wing and dorm.
> . . . .
> [After the July 9, 2016 incident,] I wrote a Request to Staff on July 10, 2016 to the warden and asked to be moved to another unit but the warden wanted me to tell him who had assaulted me. I couldn't so I thought that was all I could do about the incidents where I was attacked. I did write a statement but I could not identify the attackers. I never got an answer to my Request to Staff so I then filed a Step 2 grievance. I do not recall if I ever got a response to the Step 2 grievance.
>
> On August 5, 2017, I was again assaulted and stabbed. . . . I filed a request on the kiosk and asked to have a police services investigator come talk to me. I wrote the warden, the captain, and others asking for an investigation. A police services investigator did finally come see me and I gave him a statement about what happened. He discouraged me from pressing charges against the inmates who assaulted him [sic]. By the time the police services investigator came to see me, it was past the time to file the Step 1 or Step 2 grievances.
>
> It is almost impossible to get forms from the correctional officers. You can ask for the forms but you don't always get them.



> SCDC says that there are forms available in the law library but you have to file a Request to Staff to get to go to the law library.

(Kearse Aff. ¶¶ 20, 23-26, ECF No. 46-11 at 3-4.)

As an initial matter, Kearse does not appear to dispute that he did not fully exhaust his administrative remedies with regard to the May 25, 2017 and August 5, 2017 incidents. Notably, Kearse's affidavit is silent as to the May 2017 incident. With regard to the August 2017 incident, Kearse appears to testify that he was not able to file a Step 1 grievance regarding the incident until after speaking with a police service investigator, which would have rendered any potential Step 1 grievance attempt untimely. Such delay in acting is not supported by the SCDC Grievance Policy. (See generally SCDC Policy GA-01.12 "Inmate Grievance System," ECF No. 46-1); (Id. ¶ 13.10, ECF No. 46-1 at 10) (describing exceptions to time limit requirements, including reasonable cause). Ignorance of the grievance process does not excuse Kearse's failure to exhaust his administrative remedies. See Allen v. Lutz, C/A No. 9:18-2542-HMH, 2019 WL 117314, at *3 (D.S.C. Jan. 7, 2019) (citing Adams v. Sw. Va. Reg'l Jail, C.A. No. 7:12cv00462, 2014 WL 3828392, at *3 (W.D. Va. Aug. 4, 2014) ("[A]ny contention that plaintiff's failure-to-exhaust should be excused merely on the basis of his ignorance about the process fails."); see also Davis v. Fernandez, 798 F.3d 290, 295 (5th Cir. 2015) ("[C]ourts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them."). Therefore, Kearse did not exhaust his administrative remedies with regard to his claims stemming from the May 25, 2017 and August 5, 2017 incidents.

As to the two incidents in July 2016, the defendants provide evidence that directly contradicts Kearse's testimony. For example, the defendants provide a copy of the July 10, 2016 Request to Staff that Kearse sent to Warden Eagleton, which shows that, contrary to Kearse's testimony,

Warden Eagleton provided Kearse with a response two days later. (See ECF No. 62-15.) Contradictorily, Kearse appears to concede that, since he could not identify his attacker, he "thought that was all [he] could do about the incidents," but later states he filed a Step 1 grievance which was denied, followed by a Step 2 grievance. (Kearse Aff. ¶ 23, ECF No. 46-11 at 4.) The defendants provide a computer summary of all of the grievances filed by Kearse, review of which reveals that Kearse filed a single Step 1 grievance in March 2016—prior to any of the above-described events.[5]

Mindful of the prohibition on weighing the credibility of parties at the summary judgment stage, the court nonetheless concludes that Kearse's self-serving affidavit testimony is insufficient to raise a genuine issue of material fact with regard to whether he exhausted his administrative remedies. Cf. Pearson v. Stevenson, C/A No. 9:14-454-RBH, 2015 WL 733814 (D.S.C. Feb. 20, 2015) (finding that a plaintiff "must do more that simply submit an affidavit saying 'yes I did' file the grievance" and expect to survive summary judgment); Poe v. Bryant, C/A No. 9:12-3142-RMG, 2013 WL 6158023, at *2 (D.S.C. Nov. 21, 2013) (citing Malik v. Sligh, No. 5:11-1064-RBH, 2012 WL 3834850, at *5 (D.S.C. Sept. 4, 2012), aff'd, 507 F. App'x 294 (4th Cir. 2013)) (finding that a plaintiff's self-serving contention that he submitted a grievance was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of the plaintiff's self-serving claims); see also Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000) (holding that a self-serving affidavit was insufficient to survive summary judgment). Kearse has not provided the court with a copy of either the Step 1 or the Step 2 grievance which he claims he filed and, unlike the record pertaining to Plaintiff Montgomery, nothing else in the record

---

[5] Kearse does not rely on the March 2016 grievance in arguing that he exhausted his administrative remedies.



supports his assertion.  Accordingly, on this record, the court concludes that the defendants have met their burden to establish that Kearse failed to exhaust his administrative remedies with regard to his claims stemming from the July 2016 incidents.

### 5. Plaintiff Brunson[6]

Plaintiff Brunson's allegations stem from a stabbing assault that occurred in the cafeteria on June 3, 2016.[7]  (2d Am. Compl. ¶¶ 79-90, ECF No. 15 at 9-10.)  In response to the defendants' argument that he failed to exhaust his administrative remedies, Brunson provides affidavit testimony in which he avers:

> Following the [June 3, 2016] incident, my roommate told me that I needed to file my grievance so I asked Captain Ocean for the forms and he got them for me.  I filed my Request to Staff and my Step 1 grievance.  I put them in the grievance box located in front of the cafeteria.
>
> I never got anything back about my grievance so I asked Captain Ocean about it and he told me to be patient because they were backed up.  I tried to be patient and then I asked Captain Ocean again about my Step 1 grievance.  He again told me to be patient.  I never heard anything from the warden about my Step 1 grievance, but police services did investigate the attack against me and the other inmate was charged with attacking and stabbing me.
>
> . . . I have never received a response from the warden on my Step 1 grievance.  I am now released from SCDC.

---

[6] As discussed above, Brunson was subject to the exhaustion requirements of the PLRA.  See supra B.2 at 8-9.

[7] Although Brunson alleges that the incident occurred on August 18, 2016, the defendants argue and SCDC records show that the incident actually took place on June 3, 2016.  (Anderson Suppl. Aff. ¶ 21, ECF No. 63-7 at 8; Investigation records, ECF No. 63-16.)



(Brunson Aff. ¶¶ 24-26, ECF No. 46-21 at 4.) In reply, the defendants provide countering affidavit testimony that SCDC has no record of Brunson filing any Step 1 grievance related to the incident. (Anderson Suppl. Aff. ¶ 33, ECF No. 63-7 at 12.) The defendants aver that the only request to staff filed by Brunson related to the incident was submitted via the kiosk system on June 24, 2016, to which Brunson received a response in July 2016. (Id. ¶ 34; Inmate Request, ECF No. 63-11 at 1.)

As stated above, Brunson avers that he submitted a Step 1 grievance to which he received no response.[8] However, Brunson does not dispute that he never filed a Step 2 grievance, arguing that he was required to wait until he received a response to his Step 1 grievance before filing a Step 2 grievance. (Brunson Aff. ¶ 26, ECF No. 46-21 at 4.) SCDC policy states that generally, the warden will respond to a Step 1 grievance within 45 days, and if this time limit is extended, the inmate will be notified of such in writing. (SCDC Policy GA-01.12 "Inmate Grievance System" at ¶¶ 11, 13.5, ECF No. 46-1 at 7, 9.) The policy also notes that "in most instances, grievances will be processed from initiation to final disposition within 171 days," but that "[u]nder certain circumstances[9] the grievance process may exceed 261 days." (Id. ¶ 11, ECF No. 46-1 at 7.)

---

[8] The defendants dispute that Brunson filed a Step 1 grievance, and submit as evidence a computer summary showing that SCDC has no record of Brunson ever filing a Step 1 grievance during the applicable time period. (ECF No. 63-15.)

[9] The policy does not specify or give examples of what these circumstances may be; however, other sections of the policy discuss instances where grievances may be held in abeyance pending completion of investigations by the Division of Investigations or the South Carolina Law Enforcement Division. (See, e.g., SCDC Policy GA-01.12 "Inmate Grievance System" at ¶¶ 15, 15.1, ECF No. 46-1 at 10-11.) Although Brunson refers to an investigation in his affidavit testimony, it appears based on evidence in the record that SCDC initiated this investigation immediately following the June 3, 2016 incident, rather than in response to a grievance submission by Brunson. (See SCDC Office of Inspector General Case No. 31-2016-119, Voluntary Statements, ECF No. 63-16 at 1-4.)



Brunson does not specify the exact date on which he allegedly filed his Step 1 grievance. However, assuming he timely filed such a grievance, more than a year and nine months would have elapsed between that filing and the date on which Brunson was released from SCDC. (See Anderson Suppl. Aff. ¶ 3, ECF No. 63-7 at 2.) Accordingly, even using the longest of the time periods described under SCDC policy, it is clear that Brunson was still incarcerated at the time of the expiration of SCDC's response time to Brunson's Step 1 grievance and that Brunson did not avail himself of the next step in the grievance procedure and file a Step 2 grievance.

Thus, Brunson failed to fully and properly exhaust his administrative remedies, and his claims should therefore be dismissed. See Woodford, 548 U.S. at 90.

6.      **Plaintiff Burgess**

Plaintiff Burgess's allegations stem from a stabbing assault that occurred in the cafeteria on August 19, 2016. (See 2d Am. Compl. ¶¶ 112-22, ECF No. 15 at 11-12.) In response to the defendants' argument that he failed to exhaust his administrative remedies, Burgess provides affidavit testimony in which he avers:

> While I was on lock up, I asked the correctional officer for the forms that I needed to file my Requests to Staff and grievances. I was told that they did not have Request to Staff forms and I was given Step 1 grievance forms.
>
> I filed a Step 1 grievance about the charge against me and also about me being stabbed.
>
> I got the Step 1 grievance back telling me that I needed to file a Request to Staff but I could not do that until I got off lock up because they did not have the forms and I could not get to the kiosk. When I got off lock up, I filed the Request to Staff. I actually got an answer to that Request to Staff about a month ago. I went to the Inmate Grievance Coordinator and asked to file another Step 1 grievance but she advised me to file a Step 2 grievance. I did that about a month ago but I have not gotten a response yet.

*PJG*

(Burgess Aff. ¶¶ 20-22, ECF No. 46-15 at 3-4.)  As stated above, the law is clear that exhaustion is a prerequisite to suit and must be completed prior to filing an action.  <u>Anderson</u>, 407 F.3d at 676-77. Burgess concedes in his August 17, 2018 affidavit that he is still waiting for a response to his Step 2 grievance that he filed "about a month ago."  Thus, it is clear on this record that Burgess failed to properly exhaust his claims before he filed the instant action.  His claims should therefore be dismissed.  <u>See</u> <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999) (holding a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

### 7.    Plaintiffs State, Hardin, and Rose

Plaintiffs State, Hardin, and Rose do not dispute that they failed to take the requisite steps necessary to exhaust their administrative remedies.  Rather, they argue that exhaustion should be excused in their cases because the remedies were not available.  The court disagrees.

As detailed above, in <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016), the United States Supreme Court explicitly addressed when administrative remedies are considered unavailable under the PLRA.  Predicting that unavailability would be a rare circumstance, the court identified three such situations:  (1) the administrative procedure operates as a "dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation."  <u>Ross</u>, 136 S. Ct. at 1859.  As more fully explained above, the first two involve systemic problems; the third is case-specific.

Courts have recognized that generally the burden is on the defendant to prove that there was an available administrative remedy that the prisoner did not use, and that the burden then "shifts to



the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014); see also Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.").

Plaintiffs State, Hardin, and Rose focus on the third scenario in their opposition to the defendants' motion, arguing that actions taken by various SCDC correctional officers to intentionally misdirect, to manipulate, and to refuse to provide assistance to these inmates made the exhaustion process unavailable as defined by Ross. (Pls.' Resp. Opp'n Summ. J., ECF No. 46 at 13-19.) To support their contention that prison officials prevented them from exhausting their administrative remedies with respect to the instant claims, Plaintiffs State, Hardin, and Rose present individualized affidavit testimony as to their allegations.

Plaintiff State's allegations relate to an assault that occurred on or about August 13, 2017 (see 2d Am. Compl. ¶¶ 31-47, ECF No. 15 at 5-6), and he testifies as follows:

> I asked Correctional Officer Cox for an inmate Request to Staff form and an inmate Step 1 grievance form the day after the incident and I was not given the forms. I continued to ask for the forms but they were never given to me.
>
> I could not go to the kiosk because the dorm was on lock down.

(State Aff. ¶¶ 22-23, ECF No. 46-4 at 4.)

Plaintiff Hardin's allegations focus on an incident approximately one year earlier on August 19, 2016 (see 2d Am. Compl. ¶¶ 68-78, ECF No. 15 at 8), and he avers that:



> Since I was on lock up, I could not get access to a kiosk machine so I could not enter any request to staff or anything else on the kiosk. There are no portable kiosk machines.
>
> I asked multiple correctional officers for the necessary forms to file my Request to Staff and Step 1 grievance but they would not not [*sic*] give me the forms. I do not recall all the officers who I asked but at least one of them was a sergeant. I was told that they did not have any copies of the forms. I kept asking for the forms, hoping that they might have gotten copies. I was never given any of the necessary forms. By the time I was released from lock up the time to file a grievance had expired.

(Hardin Aff. ¶¶ 21-22, ECF No. 46-7 at 3-4.)

Plaintiff Rose's allegations stem from a series of occurrences ranging from May 25, 2017 to August 28, 2017 during which he was stabbed and beaten, (see 2d Am. Compl. ¶¶ 145-79, ECF No. 15 at 14-17), and his affidavit testimony provides that:

> I did not file any Requests to Staff or grievances about the incidents where I was attacked. I was told by one of the correctional officer[s] to file grievances if you have a problem with a correctional officer. I was told that I couldn't file anything about a criminal act on the kiosk.

(Rose Aff. ¶ 20, ECF No. 46-9 at 3-4.)

Thus, to varying degrees, all three plaintiffs testify that they did not exhaust their administrative remedies either because they were given erroneous information by an unnamed correctional officer (Plaintiff Rose), or because they were unsuccessful in obtaining forms from correctional officers (Plaintiffs State and Hardin). However, the plaintiffs' versions of events, even accepted as true, do not rise to the level of "machination, misrepresentation, or intimidation" as required by Ross. Simply put, the affidavits do not tend to show that any correctional officer used trickery, lies, or threats to prevent these plaintiffs from filing a grievance about the claims at issue. Cf. Ross, 136 S. Ct. at 1860 n.3 (providing examples of circumstances where courts have found that correction facility staff prevented the inmate from exhausting his administrative remedies). Plaintiffs

PJG

Hardin and Rose provide testimony that is vague regarding the correctional officers to whom they spoke.[10] Likewise, although Plaintiff State avers he initially requested forms from Officer Cox, he later avers only that he "continued to ask" for forms, but does not specify from whom. Furthermore, merely asking for and not receiving forms is insufficient to meet the standard required by Ross, as mere negligence on the part of a correctional officer does not rise to the level of "machination, misrepresentation, or intimidation." Moreover, to the extent these plaintiffs testify that fear of attack from other inmates precluded them from exhausting their administrative remedies, such testimony is also irrelevant to the question whether *prison officials* thwarted exhaustion.[11] In sum, the evidence upon which these plaintiffs rely does not support their contention that they were thwarted by prison officials from using the grievance procedure. These plaintiffs therefore have not met their burden to show that there is something in their particular cases that made the existing and generally available administrative remedies effectively unavailable to each of them. See Ross, 136 S. Ct. at 1860; Albino, 747 F.3d at 1172.

---

[10] Rose's affidavit seems to suggest that an officer misled him about the process; however, the defendants have provided evidence that Rose was instructed on SCDC's grievance process during his orientation when he initially entered SCDC and every time he was transferred to a different institution—at least eleven documents contain his signature stating that he had received such an orientation. (Anderson Suppl. Aff. ¶ 4, 23, ECF No. 63 at 2, 7; Certification of Inmate Orientation, ECF No. 63-1.) Moreover, the defendants provide evidence that Rose has filed approximately one-hundred and eighteen kiosk requests and six Step 1 grievances during his incarceration. (Anderson Suppl. Aff. ¶ 19, ECF No. 63 at 7.) In any event, even assuming Rose was misled about the availability of the kiosk, he admittedly never pursued any other available administrative procedures.

[11] Although the Ninth Circuit has devised a two-part test to determine whether fear of retaliation makes a grievance procedure unavailable, see McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015), the Fourth Circuit has not adopted such a test. In any event, to fall within the categories described in Ross required to render a remedy unavailable, any fear of retaliation would have to stem from action by prison officials, not other inmates. No evidence in this record supports such an inference.



Additionally, to the extent the plaintiffs imply that some action by a correctional officer would have caused any grievance to be untimely, the SCDC Grievance Policy specifically provides a remedy for instances where an inmate can show reasonable cause for untimeliness. (See SCDC Policy GA-01.12 "Inmate Grievance System" at ¶ 13.10, ECF No. 46-1 at 10.) The only permissible inference on this record is that the plaintiffs made no attempt to avail themselves of such a remedy.

For all of these reasons, the court concludes that Plaintiffs State, Hardin, and Rose have failed to carry their burden to produce evidence that their administrative remedies were unavailable for any of the reasons recognized in <u>Ross</u> or controlling Fourth Circuit precedent. Their claims should therefore be dismissed in accordance with 42 U.S.C. § 1997e(a).

### 8.    Conclusion

In summary, the defendants concede that Plaintiffs Jeter, Lee, and Glenn exhausted their administrative remedies. Additionally, the defendants concede that Plaintiffs Thomas, Scott, Anderson, and Warrick are not subject to the PLRA's exhaustion requirement and withdraw their motion as to exhaustion. As to Plaintiff Montgomery, the court finds that the defendants have not carried their burden to show that Montgomery did not exhaust his administrative remedies, as they have not presented sufficient evidence to refute Montgomery's testimony—partially corroborated by SCDC's own records—that he completed all of the required steps in the grievance process. Accordingly, they are not entitled to summary judgment at this time based on this affirmative defense.

In contrast, Plaintiff Kearse admittedly did not grieve two of the incidents about which he complains, and provides unsupported, self-serving affidavit testimony as to the other two. Plaintiff Brunson did not avail himself of every step in the grievance process in that he did not file a Step 2



grievance after failing to get a timely response to his Step 1 grievance. Plaintiff Burgess, in turn, concedes that the time to receive a response to his Step 2 grievance had not even run prior to his filing his federal complaint. Finally, Plaintiffs State and Hardin argue that their unsuccessful, lackluster attempts to obtain grievance forms rendered the grievance system unavailable, while Plaintiff Rose did not even attempt to grieve his claims allegedly based on a single passing statement made to him by one correctional officer. These facts taken as true do not permit a finding that prison official thwarted their efforts to exhaust. These plaintiffs have failed to carry their burden to produce evidence that their administrative remedies were unavailable for any of the reasons recognized in Ross or controlling Fourth Circuit precedent, and their claims should therefore be dismissed in accordance with 42 U.S.C. § 1997e(a).

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion be granted as to Plaintiffs Brunson, Burgess, State, Hardin, Rose, and Kearse. The claims brought by Plaintiffs Jeter, Lee, Glenn, Thomas, Scott, Anderson, Warrick, and Montgomery, should proceed at this time.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 24, 2019
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).